UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYBORN (UK) LIMITED, MAYBORN USA, INC., and MAYBORN GROUP LIMITED,<br><br>                    Plaintiffs,<br><br>          - against -<br><br>COMOTOMO INC. and COMOTOMO CORPORATION,<br><br>                    Defendants. | **ORDER**<br><br>22 Civ. 694 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

> Plaintiffs Mayborn (UK) Limited, Mayborn USA, Inc., and Mayborn Group Limited (collectively "Mayborn") bring this action against Defendants Comotomo Inc. and Comotomo Corporation (collectively "Comotomo"), asserting claims for patent infringement. (Cmplt. (Dkt. No. 6))  Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, to transfer the case to the Northern District of California. (Mot. (Dkt. No. 24); Def. Br. (Dkt. No. 25))  For the reasons stated below, this action will be transferred to the Northern District of California.

## BACKGROUND

### I.    FACTS

> Mayborn creates baby products and has been in business for more than sixty years.  (Cmplt. (Dkt. No. 6) ¶ 11)  Mayborn (UK) Limited and Mayborn Group Limited are English corporations with their principal places of business in Newcastle upon Tyne, United Kingdom.  (Id. ¶¶ 4-5)  Mayborn USA Inc. is a New York corporation with its principal place of business in Stamford, Connecticut.  (Id. ¶ 3)

Mayborn's Tommee Tippee brand is the most popular baby bottle brand in the United Kingdom and Australia and, since the brand's introduction here in the past decade, it has become a major factor in the U.S. market.  (<u>Id.</u> ¶ 11)  In 2021, Mayborn patented a new design for baby bottles featuring a "breast-like" shape that "makes switching between breast and bottle feeding simpler than with traditional baby bottles."  (<u>Id.</u> ¶¶ 13, 17-18)  Mayborn markets these bottles under its "Closer to Nature" ("CTN") line.  (<u>Id.</u> ¶ 12)  Below is an image comparing Mayborn's CTN bottles' design to a traditional baby bottle's design.



(<u>Id.</u> ¶ 13)  Mayborn alleges that its CTN bottles "revolutionized the baby industry by being the first to have a real breast-like shape."  (<u>Id.</u> ¶ 12)

On March 3, 2021, the U.S. Patent and Trademark Office issued "Baby Bottle With Flexible Nipple Regions," Patent No. 10,952,930 (the "930 Patent").  (<u>See id.</u> ¶¶ 2, 17)  On December 28, 2021, the U.S. Patent and Trademark Office issued Patent No. 11,207,244 (the

"244 Patent"), a continuation of the 930 Patent (collectively, the "Asserted Patents").  (See id. ¶¶ 2, 18)  Both Asserted Patents are "continuations of a patent family that claims priority to June 29, 2004."  (Id. ¶ 16)

Comotomo Inc., is a California corporation with its principal place of business in Sunnyvale, California.  (Id. ¶ 6)  Mayborn alleges that Comotomo Inc. has an office in this District, at "79 Madison Ave., Floor 2, New York, New York 10016."  (Id.)  Comotomo Corporation is a Korean corporation with its principal place of business in Seoul, Korea.  (Id. ¶ 7)

Mayborn alleges that Comotomo makes baby bottles using Mayborn's patented "breast-like shape, design, and functionality," and sells them in the United States via retailers such as Walmart, Target, and Amazon.  (Id. ¶¶ 21-26)

## II.    PROCEDURAL HISTORY

The Complaint was filed on January 26, 2022, and asserts claims against Comotomo for direct and induced infringement of both Asserted Patents.  (Id. ¶¶ 27-58)

On May 31, 2022, Comotomo moved to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, to transfer this case to the Northern District of California. (Mot. (Dkt. No. 24); Def. Br. (Dkt. No. 25))  Mayborn filed its opposition to Comotomo's motion on June 22, 2022.  (Pltf. Opp. (Dkt. No. 39))  Mayborn seeks "leave to take venue-related discovery" should this Court decide that "Mayborn has not met its burden of establishing venue in this District."  (Id. at 5-6, 12-15)[1]  Comotomo opposes Mayborn's request for venue-related discovery.  (Def. Reply (Dkt. No. 42) at 13-14)

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

**DISCUSSION**

## I.   APPLICABLE LAW

### A.   Rule 12(b)(3) Standard

"Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue." Pers. v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  In considering such a motion, "[t]he Court 'must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits.'"  Rankel v. Kabateck, 2013 WL 7161687, at *2 (S.D.N.Y. Dec. 9, 2013) (quoting U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).  Where, as here, neither side has requested an evidentiary hearing, a court may "'rely on pleadings and affidavits, [and] the plaintiff need only make a prima facie showing of [venue].'"  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364–65 (2d Cir.1986)).  "Courts may consider materials outside the pleadings when deciding a motion to dismiss for improper venue under Rule 12(b)(3) . . . ."  Brennen v. Phyto-Riker Pharm., Ltd., 2002 WL 1349742, at *1 n.2 (S.D.N.Y. June 20, 2002) (citing New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)).

### B.   Venue in Patent Infringement Cases

Venue in patent infringement cases involving U.S. entities and individuals is governed by 28 U.S.C. § 1400(b), the patent venue statute.  NetSoc, LLC v. Chegg Inc., 2019 WL 4857340, at *2 (S.D.N.Y. Oct. 2, 2019) (citing TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1516 (2017); In re ZTE (USA) Inc., 890 F.3d 1008, 1113 (Fed. Cir. 2018)).  Section 1400(b) provides that a "civil action for patent infringement may be brought

4

in [(1)] the judicial district where the defendant resides, or [(2)] where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

Section 1400(b) does not apply to foreign defendants, however, which "may be sued in any judicial district."  28 U.S.C. § 1391(c)(3).  "[T]he joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."  Id. Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706 (1972) (Section 1400(b) does not govern venue determination as to foreign defendants in a patent infringement action).

For purposes of Section 1400(b), "a domestic corporation 'resides' only in its State of incorporation."  TC Heartland LLC, 137 S. Ct. at 1517.

As to Section 1400(b)'s "regular and established place of business" prong, courts apply a three-part test:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  In re Cray, Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017)  "If any statutory requirement is not satisfied, venue is improper under § 1400(b)."  Id.  To satisfy the "physical place" requirement, a plaintiff must allege a "a physical, geographical location in the district" at which defendant carries out its business.  Id. at 1362.  For such a place to be "regular and established," it must be operated "'in a steady, uniform, orderly, and methodical manner,'" and it must be "'settled certainly, or fixed permanently.'"  NetSoc, 2019 WL 4857340, at *3 (quoting In re Cray, 871 F.3d at 1362-63 (citations omitted).  In determining whether the place is "of the defendant," courts consider factors such as "(1) whether the defendant owns, leases, or otherwise exercises control over the premises; (2) 'whether the defendant conditioned employment on an employee's continued

5

residence in the district'; (3) whether the defendant stored inventory there to be sold or distributed from that place; (4) whether the defendant made outward representations that the physical location was its place of business; and (5) how the alleged place of business in the district compares to other places of business of the defendant in other venues." Zaxcom, Inc. v. Lectrosonics, Inc., 2019 WL 418860, at *5 (E.D.N.Y. Feb. 1, 2019) (quoting In re Cray, 871 F.3d at 1363-64); see also NetSoc, 2019 WL 4857340, at *3.

"In applying the patent venue statute, the Court is mindful that it 'should not be liberally construed in favor of venue.'" NetSoc, LLC, 2019 WL 4857340, at *2 (quoting In re ZTE (USA) Inc., 890 F.3d at 1014); see also Peerless Network, Inc. v. Blitz Telecom Consulting, LLC, 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018) (noting that "patent venue is narrower than general venue").

## C. Venue-Related Discovery

In determining whether venue-related discovery should be granted in a patent infringement action, courts in this District apply the same standard applicable to requests for jurisdictional discovery. NetSoc, LLC, 2019 WL 4857340, at *4 ("[T]he Court will apply Second Circuit law concerning jurisdictional discovery to [a] request for venue discovery."); Berall v. Teleflex Med. Inc., 2022 WL 2666070, at *5 (S.D.N.Y. July 11, 2022) (applying jurisdictional discovery standard); TrackThings LLC v. NETGEAR, Inc., 2022 WL 2829906, at *12 (S.D.N.Y. July 20, 2022) (same).

A "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant," and "may carry this burden 'by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a "prima facie showing" of jurisdiction.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Jazini v. Nissan Motor Co.,

6

Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).  "A plaintiff can make this showing through his 'own affidavits and supporting materials[,] . . . containing an 'averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant.'"  Id. (quoting first Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981), and second Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).  Where a plaintiff does "not establish a prima facie case that the district court has jurisdiction over [the defendant], [however,] the district court [does] not err in denying [jurisdictional] discovery."  Jazini, 148 F.3d at 186 (2d Cir. 1998).  A prima facie case requires non-conclusory "'legally sufficient [factual] allegations of jurisdiction.'"  Id. at 185-86.  Courts in this District routinely deny venue-related discovery in patent infringement actions where a plaintiff has not proffered "fact-specific allegations or evidence that could support a finding that venue is proper."  NetSoc, LLC, 2019 WL 4857340, at *4; see also Berall, 2022 WL 2666070, at *5; TrackThings, 2022 WL 2829906, at *12.

## II.    ANALYSIS

The parties do not dispute that (1) Comotomo Corporation – as a foreign entity – is amenable to venue wherever venue is proper as to Comotomo Inc., and (2) Comotomo Inc. resides, for purposes of Section 1400(b), in California.  Defendants also do not dispute – for purposes of this Court's venue determination – that Plaintiff has properly pled the commission of infringing acts within this District.  (Def. Br. (Dkt. No. 25) at 6-7, 12; Pltf. Opp. (Dkt. No. 39) at 6)  Accordingly, the venue determination turns on whether Plaintiffs have proffered facts demonstrating that Comotomo Inc. "has a regular and established place of business" in this District.

A.    **Relevant Time Frame**

As an initial matter, this Court must determine the relevant time frame for

determining whether an alleged infringer has a "regular and established place of business in [the]

district [at issue]."  The Federal Circuit has not ruled on this issue, and older decisions from

"regional circuits appear to be split on the exact timing for determining venue."  In re Google

LLC, 949 F.3d 1338, 1340 n.1 (Fed. Cir. 2020).

The more recent cases from district courts in this Circuit hold that the venue

determination must be made based on the facts extant at the time a complaint is filed.  See, e.g.,

NetSoc, 2019 WL 4857340, at *2 (defendant "is correct that venue is to be analyzed based on the

facts existing at the time this action was commenced"); Uni-Sys., LLC v. United States Tennis

Ass'n Nat'l Tennis Ctr. Inc., 2020 WL 1694490, at *7 (E.D.N.Y. Apr. 7, 2020) ("[V]enue is

determined based on the facts existing at the time the plaintiff commences an action."); see also

Flowers Indus., Inc. v. F.T.C., 835 F.2d 775, 777 n.1 (11th Cir. 1987) ("[V]enue must be

determined based on the facts at the time of filing.").

Courts in the Seventh Circuit have concluded, however, that venue is proper if the

defendant had a "regular and established place of business at the time the cause of action

accrued, and the suit is filed within a reasonable time thereafter."  Welch Sci. Co. v. Hum. Eng'g

Inst., Inc., 416 F.2d 32, 35 (7th Cir. 1969); Mantissa Corp. v. Great Am. Bancorp, Inc., 446 F.

Supp. 3d 398, 405 (C.D. Ill. 2020) ("It is at the time the cause of action accrues and a reasonable

time thereafter that [c]ourts consider when assessing whether a defendant has a regular and

established place of business in the district.").

This Court will refer to these two approaches as the "filing date approach" and the

"accrual date approach."

8

Here, Comotomo argues that the filing date approach is correct, stating that "the relevant time for assessing whether venue is proper is the date of the filing of the complaint." (Def. Br. (Dkt. No. 25) at 7)

Plaintiffs do not adopt either approach, but instead argue that the venue determination turns on whether defendant has or had a "regular and established place of business in this District." In making this determination, a court must perform a "look back in time." (Pltf. Opp. (Dkt. No. 39) at 8-9) For example, Plaintiffs argue that – even though this action was not filed until 2022 – this Court should give weight to the fact that Comotomo Inc. maintained an office in New York between 2015 and 2018. (See Pltf. Opp. (Dkt. No. 39) at 6-12 ("[N]o presence could ever be 'regular and established' if the Court only considered what a defendant was doing on the day the lawsuit was filed.")) Plaintiffs argue that Comotomo Inc.'s activities in this District during the 2015 to 2018 time period are properly considered as part of a necessary "look back in time" in determining whether Comotomo Inc. has a "regular and established place of business in this District." (Id. at 8-9)

In support of their arguments, Plaintiffs rely primarily on San Shoe Trading Corp. v. Converse Inc., 649 F. Supp. 341 (S.D.N.Y. 1986). In that case, defendant Converse argued that venue in this District was improper because "it had moved out of the only office it occupied in this District more than a month before [plaintiff] filed its complaint." San Shoe Trading, 649 F. Supp. at 343 (S.D.N.Y. 1986). Plaintiff San Shoe Trading argued, however, that "[f]rom August, 1983, until at least July of 1985, Converse operated a showroom in the Southern District of New York from which it solicited sales of the allegedly infringing goods." Id. at 342. Anticipating a lawsuit, Converse "retreat[ed] to [its] home forum simply by closing up shop before plaintiff ha[d] an opportunity to file a complaint." Id. at 344. Citing Welch Sci. Co., 416

9

F.2d at 35, the <u>San Shoe Trading</u> court concluded that the accrual date approach is correct.  <u>Id.</u> at 345.

Here, it is not necessary to resolve the conflict between the filing date approach and the accrual date approach because – as discussed below – venue is not proper in this District under either approach.

**B.      Applying the *In re Cray* Factors**

As discussed above, <u>In re Cray</u> sets out "three general requirements" relevant to the "regular and established place of business" inquiry:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  <u>In re Cray Inc.</u>, 871 F.3d at 1360.

For purposes of the filing date approach, the relevant date is January 27, 2022, when the Complaint was filed.  (Cmplt. (Dkt. No. 6))  For purposes of the accrual date approach, the relevant date is no earlier than March 3, 2021, when the '930 patent was issued.  (Cmplt. (Dkt. No. 6) ¶¶ 17-18); 35 U.S.C. § 271 ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."); <u>Amgen, Inc. v. Genetics Inst., Inc.</u>, 98 F.3d 1328, 1332 (Fed. Cir. 1996) ("[S]uit can not be brought for infringement of a patent that has not issued."))

It is undisputed that Comotomo Inc. last had an office within this District in March 2018.  (Lee Decl. (Dkt. No. 26) ¶ 6; Pltf. Opp. (Dkt. No. 39) at 6-7)  March 2018 is nearly four years before the Complaint was filed, and March 2018 is more than three years before Plaintiffs' infringement claim could have accrued.  Accordingly, Plaintiffs' venue arguments fail under both the filing date approach and the accrual date approach.

Plaintiffs argue, however, that (1) a page on Comotomo Inc.'s website still lists its previous New York address; and (2) until February 2021, Jeff Simsiman – a Comotomo Inc. employee – had a LinkedIn page stating that he worked from New York and "'[m]anaged orders and shipping to retailers and end-user customers' . . . [and] '[p]rovided support in addressing customer service issues.'"  (Pltf. Opp. (Dkt. No. 39) at 7-8 (quoting Smissian's LinkedIn page (Dkt. No. 39-2))

These factual allegations do not change the outcome.  As an initial matter, Comotomo has represented that the reference to a New York address on its website is an artifact, and that the correct "about us" page – which Plaintiffs have acknowledged – lists the company's Sunnyvale, California address.  (Def. Reply (Dkt. No. 42) at 10-11; see also Pltf. Opp. (Dkt. No. 39) at 7 n.1 (acknowledging that Comotomo's website has a second "About Us" page containing the Sunnyvale, California address))  In any event, the presence of an address on a website is not sufficient – under the circumstances here – to demonstrate that Comotomo Inc. had a "'physical, geographical location in the district from which [its] business is carried out,'" Uni-Sys. 2020 WL 1694490, at *8 (quoting In re Cray, 871 F.3d at 1362), much less that this place of business was "regular and established" and that it was the business place "of the Defendant" within the relevant time period.  See TrackThings, 2022 WL 2829906, at *7 ("Irrespective of any indication to the contrary on its website, . . . the Court is assured that, at the time this suit was filed, Defendant had abandoned its physical office presence in New York City.").

As to Simsiman, assuming arguendo that he was working for Comotomo "from New York,"[2] Plaintiffs have not alleged sufficient facts to support finding venue in this District.

---

[2]  Defendants represent that Simsiman's work for Comotomo (1) took place in New Jersey;

For example, Plaintiffs have not alleged that Comotomo "paid for [Simsiman's] . . . living expenses or that [Comotomo] . . . hold[s] itself out as doing business from any employee's New York residence." NetSoc, 2019 WL 4857340, at *3.  Nor have Plaintiffs alleged that Defendants used Simsiman's home "to store [their] 'literature, documents and products' [or] . . . like [a] distribution center[], stor[e] inventory that the employees then directly took to . . . clients."  In re Cray, 871 F.3d at 1362 (quoting In re Cordis Corp., 769 F.2d 733, 735 (Fed. Cir. 1985))  "[I]t is of no moment that an employee may permanently reside at a place or intend to conduct his or her business from that place for present and future employers.  'The statute clearly requires that venue be laid where the defendant has a regular and established place of business, not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant.'"  Id. at 1365 (quoting Am. Cyanamid Co. v. Nopco Chem. Co., 388 F.2d 818, 820 (4th Cir. 1968)) (internal quotation marks omitted).

Citing RegenLab USA, LLC v. Estar Techs. Ltd., 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018), Plaintiffs argue that where "'all [of a defendant's] employees work from home, home offices constitute a primary physical location for [defendant's] business.'"  (Pltf. Opp. (Dkt. No. 39) at 11 (quoting RegenLab, 335 F. Supp. 3d at 549 (alterations in Plaintiffs' brief)))  The facts in RegenLab are not comparable to those here, however, as the summary below demonstrates.

> Eclipse's employees have not merely worked out of New York offices by
> happenstance  . . . .  Although Eclipse does not require sales people to live in their
> assigned territory, Eclipse admits that it "tries to hire people living within their
> assigned sales territory," one of which is New York.  O'Brien Decl ¶ 12.  Indeed,
> Eclipse's job postings reveal that it seeks out territory managers for specific
> locations.  See Ball Venue Decl Exs. B, C. Those job postings list requirements

---

(2) lasted only three months; and (3) ended in February 2021, before Plaintiffs' claim accrued and before the Complaint was filed.  (Lee Reply Decl. (Dkt. No. 43) ¶ 6)

that necessitate working within that sales territory. For instance, a regional territory manager in the Rochester, New York area must "[i]dentify and qualify prospective customers, demonstrate company products and establish new business" and "develop and maintain local luminaries, workshops and training centers." <u>Id.</u> Ex. C; <u>see also</u> <u>id.</u> Ex. F (advertising training in New York).  And as discussed <u>supra</u>, sales agents must contact potential customers at their offices and conduct trainings when the Eclipse products arrive.  All of these tasks necessitate proximity to customers.

<u>RegenLab</u>, 335 F. Supp. 3d at 550-51.

In sum, in <u>RegenLab</u>, the defendant "solicit[ed] sales people in public advertisements to cover the New York area and prefer[red] that those employees live in their assigned sales area." <u>Id.</u> at 552.  The defendant's New York salespeople were provided with "sales kit[s] [containing sales literature and samples of the defendant's products] . . . which are used for sales demos. . . . The employees did not merely possess those products – their use in New York was part of each employee's job description.  As discussed above, when Eclipse products arrive at a customer's home, the employee uses the products stored in their home office to conduct demonstrations." <u>Id.</u>

The <u>RegenLab</u> court found that these facts "differentiate[] this matter from <u>In re Cray</u>," in which there was "'no evidence show[ing] that [the defendant] believed a location within the Eastern District of Texas to be important to the business performed,' or that the defendant 'had any intention to maintain some place of business in that district in the event [the employees] decided to terminate their residences as a place where they conducted business.'" <u>Id.</u> (quoting <u>In re Cray</u>, 871 F.3d at 1365).

Here, Plaintiffs have not proffered facts demonstrating that "(1) [] the defendant owns, leases, or otherwise exercises control over the premises; (2) [] the defendant conditioned employment on an employee's continued residence in the district; (3) [] the defendant stored

inventory there to be sold or distributed from that place; [or] (4) [] the defendant made outward representations that the physical location was its place of business . . . ." Zaxcom, 2019 WL 418860, at *5 (citing Cray, 871 F.3d at 1363-64)  Nor have Plaintiffs addressed "how the alleged place of business in the district compares to other places of business of the defendant in other venues."  Id.[3]  The Court concludes that Plaintiffs have not proffered facts sufficient to demonstrate that Defendants have a regular and established place of business in this District.

Plaintiffs argue, however, that this Court should find venue in this District in the interests of "judicial economy," citing Nanobebe US Inc. v. Mayborn (UK) Limited et al, S.D.N.Y. 1:21-cv-08444-GHW, in which Plaintiffs are asserting the same patents at issue here. (Pltf. Opp. (Dkt. No. 39) at 11-12)  While judicial economy is a factor to consider for purposes of transfer motions arising under 28 U.S.C. § 1404(a), courts do not cite judicial economy in applying 28 U.S.C. § 1400(b), the patent venue provision.  See e.g., Google, 949 F.3d at 1346 ("We reach our conclusion bearing in mind that, as we noted in Cray, the Supreme Court has cautioned against a broad reading of the venue statute." (citing Stonite Prod. Co. v. Melvin Lloyd Co., 315 U.S. 561, 566 (1942))); In re Cray, 871 F.3d at 1361 ("'Congress adopted the predecessor to § 1400(b) as a special venue statute in patent infringement actions to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served.'" (quoting Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262 (1961))); Uni-Sys., 2020 WL 1694490, at *16 ("[Section 1400] is not to be

---

[3]  The Complaint alleges that Comotomo Vice President Tony Lee "works out of New York." (Cmplt. (Dkt. No. 6) ¶ 9)  In his declaration, however, Lee reports that he resides in, and works from, an apartment in Queens, which is located in the Eastern District of New York.  (Lee Decl. (Dkt. No. 26) ¶ 2)  Given that it is undisputed that Lee resides in, and works from, an apartment located in the Eastern District of New York, Lee's work location does not support Plaintiffs' argument that this Court should find venue in this District.

liberally construed 'in the interests of some overriding policy.'" (quoting <u>Schnell</u>, 365 U.S. at 262)).

In any event, <u>Nanobebe</u> is assigned to Judge Woods, and he has declined to accept the instant case as related to <u>Nanobebe</u>.  (<u>See</u> Dkt. Sheet at January 28, 2022 ("Case referred as related to 1:21-cv-08444-GHW and declined by Judge Gregory Woods."))

In sum, Plaintiffs have not made a <u>prima facie</u> showing that Comotomo has a "regular and established place of business" in this District.  Accordingly, venue is not proper in the Southern District of New York.

**C.**   **<u>Plaintiffs' Request for Venue-Related Discovery</u>**

Plaintiffs request leave to take venue-related discovery "[t]o the extent that the Court finds that Mayborn has not met its burden for establishing venue in this District."  (Pltf. Opp. (Dkt. No. 39) at 12)  Plaintiffs request leave to issue "10 interrogatories [and] 10 requests for production," to depose Comotomo's Vice President and declarant, Tony Lee, and to depose a Rule 30(b)(6) witness concerning "the nature and activity of Comotomo's place of business in the State of New York."  (<u>Id.</u> at 12-13)  Comotomo opposes Plaintiffs' request.  (Def. Reply (Dkt. No. 42) at 13-14)

As discussed above, Plaintiffs have "failed to allege fact-specific allegations or evidence that could support a finding that venue is proper" in this District.  <u>NetSoc</u>, 2019 WL 4857340, at *4.  Indeed, Plaintiffs "did not allege facts supporting any <u>Cray</u> prong."  <u>Berall</u>, 2022 WL 2666070, at *5.  Given these circumstances, Plaintiffs' request for venue-related discovery is denied.

15

D.     <u>Transfer to the Northern District of California</u>

28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "[T]he decision whether to transfer or dismiss is evaluated under 28 U.S.C. § 1406(a) and 'lies within the sound discretion of the district court.'"  <u>Pisani v. Diener</u>, 2009 WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) (quoting <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993)); <u>see also</u> <u>NetSoc</u>, 2019 WL 4857340, at *5 (transferring a patent infringement case to the Northern District of California under Section 1406(a)); <u>Berall</u>, 2022 WL 2666070, at *6 (transferring a patent infringement case to the Eastern District of North Carolina).

"Dismissal may be appropriate when the case is a 'sure loser on the merits,' so as not to 'waste the time of another court by transferring it.'"  <u>TrackThings</u>, 2022 WL 2829906, at *13 (S.D.N.Y. July 20, 2022) (quoting <u>Moreno-Bravo v. Gonzalez</u>, 463 F.3d 253, 263 (2d Cir. 2006)).  At this stage of the proceedings, this Court has no view as to the merits of this case. Accordingly, dismissal is not warranted.  <u>See</u> <u>id.</u>

Comotomo has requested that – if this Court determines that venue is not proper in this District and does not dismiss the action – the case be transferred to the Northern District of California.  The parties do not dispute that this action could have been brought in the Northern District of California, because Comotomo is a California corporation that is headquartered in Sunnyvale, California, which is within the Northern District of California.  28 U.S.C. § 1400(b); Def. Br. (Dkt. No. 25) at 4; Cmplt. (Dkt. No. 6) ¶ 6.  Accordingly, this case will be transferred to the Northern District of California.

## **<u>CONCLUSION</u>**

For the reasons stated above, Comotomo's motion to transfer is granted.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 24), to close this case, and to transfer

this action to the Clerk of the U.S. District Court for the Northern District of California.

Dated: New York, New York
      January 3, 2023              SO ORDERED.

Paul G. Gardephe
United States District Judge